RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0086p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

IN RE: UNITED STATES OF AMERICA,

                  *Petitioner.*       No. 21-1318

─────────────

On Petition for Writ of Mandamus.

United States District Court for the Eastern District of Michigan at Detroit.
No. 2:19-cr-20840-1—David M. Lawson, District Judge.

Argued: October 21, 2021

Decided and Filed: April 26, 2022

Before: SUTTON, Chief Judge, BATCHELDER and LARSEN, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Andrew Goetz, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Petitioner. Gerald K. Evelyn, Detroit, Michigan, for Respondent Ashley Townsend. John Gleeson, DEBEVOISE & PLIMPTON LLP, New York, New York, for Respondent Hon. David M. Lawson. **ON PETITION FOR WRIT OF MANDAMUS AND REPLY:** Andrew Goetz, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Petitioner. **ON RESPONSE:** Gerald K. Evelyn, Robert E. Higbee, Detroit, Michigan, for Respondent Ashley Townsend. John Gleeson, Matthew Specht, Monisola Salaam, DEBEVOISE & PLIMPTON LLP, New York, New York, for Respondent Hon. David M. Lawson. Bradley R. Hall, CRIMINAL DEFESE ATTORNEYS OF MICHIGAN, Lansing, Michigan, for Amicus Curiae.

─────────────

## OPINION

─────────────

    ALICE M. BATCHELDER, Circuit Judge. Before us is a petition from the United States for a writ of mandamus directed to the United States District Court for the Eastern District of

Michigan. The petition poses questions about a district court's authority to comment on pending plea-bargain agreements and to reject an agreement once it is finalized.

At a pretrial hearing, the district court informed the United States and the Defendant that it had a longstanding "practice" of rejecting plea agreements with certain plea-bargaining terms. The parties thereafter negotiated a plea agreement in private and decided to include the very terms that the court had stated that it disfavored. The court rejected the agreement, and the United States filed this petition, claiming that the court violated Rule 11 of the Federal Rules of Criminal Procedure and abused its discretion. We AGREE and GRANT the petition.

**I.**

In February 2020, the United States indicted Defendant Ashley Townsend on four counts: one count for being a felon in possession of a firearm (Count One), two counts of possession with intent to distribute controlled substances (Counts Two and Three), and one count of possessing firearms in furtherance of the crimes charged in Counts Two and Three (Count Four). If Townsend were convicted at trial on all charges, he would face a minimum aggregate prison term of 20 years and a maximum term of life in prison.

In August 2020, the district court held a pretrial hearing. During the hearing, the parties requested an adjournment of the final pretrial conference because they were engaged in plea discussions. In response, the district court expressed its belief that the U.S. Attorney's Office for the Eastern District of Michigan had recently adopted a policy of offering only plea deals that contain sentencing-appeal and collateral-review waivers (collectively, "appeal waivers"). The court then stated on the record its disapproval of these types of waivers and its intention to continue rejecting plea agreements that contain them:

> My practice over the years has not—has been not to accept plea agreements that have waivers of rights to collateral review or the right to appeal a sentence determination or sentencing issue that is disputed, and I continue to—I intend to continue that practice.
>
> So if it's the Government's position that the plea agreement must contain that language, I will not accept the plea agreement. I will reject it. So you may think about having to prepare for trial nonetheless. Just keep that in mind as you engage in your discussions.

Afterwards, the parties negotiated a plea agreement in private, and, on August 31, 2020, presented it to the court via email. In it, Townsend agreed to plead guilty to Counts Three and Four, and the United States agreed to dismiss Counts One and Two and withdraw its 21 U.S.C. § 851 prior-felony information. The agreement reduced Townsend's mandatory minimum sentence by half, to an aggregate of 10 years. It also contained a joint recommendation that Townsend be classified as a career offender within the meaning of U.S.S.G. § 4B1.1 and the United States's recommendation that the total sentence imposed should not exceed 300 months. Most importantly for purposes of this appeal, the agreement included two appeal waivers:

> 12. Appeal Waiver. The defendant waives any right he may have to appeal his conviction on any grounds. If the defendant's sentence of imprisonment does not exceed 300 months, the defendant also waives any right he may have to appeal his sentence on any grounds.

> 13. Collateral Review Waiver. The defendant retains the right to raise claims alleging ineffective assistance of counsel, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right he may have to challenge his conviction or sentence by collateral review, including, but not limited to, any right he may have to challenge his conviction or sentence on any grounds under 28 U.S.C. § 2255, 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

These waivers do not preclude Townsend's appealing his sentence if it exceeds the United States's recommendation of 300 months, or seeking relief for ineffective assistance of counsel (28 U.S.C. § 2255), compassionate release (18 U.S.C. § 3582(c)), or relief based upon prosecutorial misconduct by the United States.

Shortly after receiving the parties' email, the court responded that it would not accept the plea agreement. The court's email stated: "[The court] has reviewed the Rule 11 Agreement and will not agree to its terms. If it doesn't get amended, we'll proceed with the pretrial conference on [September] 2nd." The following day, the United States and Townsend filed a joint motion asking the court to accept the plea agreement. The court then cancelled the plea hearing and appointed a retired United States District Judge for the Eastern District of New York to file a response as *amicus curiae*. Six months later, after full briefing from *amicus curiae* and the

parties, the court issued a written opinion denying the parties' joint motion and rejecting the proposed plea agreement.

The United States filed a petition for writ of mandamus in this court, seeking an order directing the district court to "accept or reject the [parties'] plea agreement without regard to [its] 'practice' against [appeal waivers]." In the petition, the United States describes on- and off-the-record statements by the district court in other cases expressing its policy against permitting appeal waivers. Townsend filed a brief agreeing with the United States that mandamus relief is appropriate. The district court responded in opposition.

## II.

The United States asks us to issue a writ of mandamus directing the district court to reconsider the parties' plea agreement and cease its "practice" of prohibiting all plea agreements containing appeal waivers. To issue that writ, we must first decide whether the district court participated in the parties' plea negotiations and whether it improperly rejected the resulting plea agreement; and, if it did either, whether mandamus is the appropriate remedy.

Our jurisdiction to issue a writ of mandamus comes from the All Writs Act, 28 U.S.C. § 1651, which allows us to "restrain[] the[] excesses" of "judges of any inferior court." *In re Univ. of Mich.*, 936 F.3d 460, 466 (6th Cir. 2019) (quoting 3 William Blackstone, *Commentaries on the Laws of England* *110–11); *see also In re Acker*, 596 F.3d 370, 372 (6th Cir. 2010) ("The traditional use of the writ . . . has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." (quotation omitted)). Mandamus, however, is an extraordinary remedy. *In re Univ. of Mich.*, 936 F.3d at 466. It is appropriate only where there is a clear abuse of discretion or a judicial usurpation of power. *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004). For us to issue a writ, the United States must "(1) have no other adequate means of obtaining relief, (2) demonstrate a right to issuance that is clear and indisputable, and (3) show that issuance of the writ is appropriate under the circumstances." *In re Univ. of Mich.*, 936 F.3d at 466.

This is one of those rare cases in which mandamus is warranted. First, the United States has no other adequate means of obtaining relief. The United States has only a limited right to

direct appeal, *see* 18 U.S.C. § 3731, and that right does not extend to interlocutory appeal. Second, the need for mandamus is clear and indisputable. The district court violated Rule 11's prohibition on judicial involvement in plea negotiations and abused its discretion by not offering case-specific reasons for rejecting the parties' plea agreement. Third, mandamus is appropriate because the district court clearly overstepped its authority, and this writ presents important and likely reoccurring questions.

## A. No Other Adequate Means of Obtaining Relief

The United States has no other adequate means of obtaining relief. "[A] mandamus lies, if there be no other *adequate*, *specific*, *legal* remedy." *In re Univ. of Mich.*, 936 F.3d at 466 (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 152, 2 L.Ed. 60 (1803)). If we deny mandamus, the United States cannot file an interlocutory appeal under 18 U.S.C. § 3731, nor can it later file a direct appeal if Townsend pleads to the indictment, is convicted by a jury, or is acquitted after trial. *See In re United States*, 945 F.3d 616, 624 (2d Cir. 2019). Even if the United States could challenge the rejection of this plea agreement on direct appeal, the United States would "be damaged or prejudiced in a way not correctable on appeal." *See John B. v. Goetz*, 531 F.3d 448, 457 (6th Cir. 2008). An unnecessary direct appeal is the very thing the parties sought to avoid when they submitted their plea agreement, and the United States's extremely limited right to appeal at all cannot provide it with an "*adequate* means to attain relief." *Id.* at 458; *see also In re United States*, 945 F.3d at 624 ("Our precedents make it abundantly clear . . . that the government's limited right of appeal in criminal cases is relevant to the mandamus inquiry."); *United States v. Vinyard*, 539 F.3d 589, 595 (7th Cir. 2008) (granting the United States's mandamus petition to correct a misapplication of Rule 11 that resulted in a potential double jeopardy problem); *United States v. Wexler*, 31 F.3d 117, 128 (3d Cir. 1994) (considering the United States's limited right to appeal in granting it mandamus); 16 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3936.2 (3d ed. 2021) ("Statutory and double-jeopardy limits on government appeals have encouraged review by extraordinary writ in circumstances that would not support writ review on petition by a defendant.").

According to the United States, the primary purpose of plea agreements that include appeal waivers is to ensure finality. That is a strong, legitimate, and well-established government interest. *See United States v. Blewett*, 746 F.3d 647, 651 (6th Cir. 2013) (en banc) (noting that the government's interest in finality is "of the weightiest sort" and that it "is essential to the operation of our criminal justice system" (quotations omitted)); *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) ("[T]he strong societal interest in finality has 'special force with respect to convictions based on guilty pleas.'" (quotation omitted)). That interest would be undermined if the United States were limited to seeking relief only after it renegotiated a plea agreement without appellate waivers that is less favorable from the United States's perspective, and then litigated the issue on direct appeal after sentencing. *See In re Vasquez-Ramirez*, 443 F.3d 692, 701 (9th Cir. 2006) (holding that "going to trial" or "pleading guilty to . . . and then appealing [a] conviction" are "inadequate" remedies for purposes of mandamus, as they would result in "substantial prejudice" to the defendant, the government, and the judicial system (quotations omitted)).

To be sure, a party may not invoke mandamus as a "substitute" for the ordinary appellate process. *Will v. United States*, 389 U.S. 90, 97 (1967). But where, as here, the normal appeals process does not suffice, mandamus is not merely a substitute. In this case, mandamus is the only adequate means for the United States either to compel the district court to adhere to Rule 11 or to challenge the district court's self-proclaimed "practice." While we are mindful of the district court's argument that allowing mandamus here may create an influx of government-sought writs, that argument does not carry the day. The court is equipped to weed out meritless petitions: we stringently examine three threshold questions in every mandamus case. Those measures are adequate to prevent us from issuing an unjustified number of writs.

Finally, because Townsend is not the party seeking the writ, *his* means of relief are irrelevant. *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35 (1980) ("[T]his Court has required that *a party seeking issuance* have no other adequate means to attain the relief he desires." (emphasis added)); *Will*, 389 U.S. at 96 ("[T]he party seeking mandamus has the burden . . . ." (cleaned up)). It, therefore, makes no difference that Townsend has a greater opportunity to file a direct appeal. *See United States v. Cota-Luna*, 891 F.3d 639, 651 (6th Cir.

2018) (considering a defendant's claim on direct appeal where the defendant accepted a less-favorable plea agreement after his initial agreement was rejected); *United States v. Doggart*, 906 F.3d 506, 509 (6th Cir. 2018) (considering a defendant's claim on direct appeal where he was convicted by a jury and sentenced after his plea agreement was rejected). But even if we did consider Townsend's means of relief, a direct appeal would still be inadequate. *See In re Benvin*, 791 F.3d 1096, 1103 (9th Cir. 2015) (granting defendant's mandamus petition and finding that his choice between trial and a less-favorable plea agreement did "not provide [him] adequate relief and [could] cause prejudice not correctable on appeal").

Therefore, the United States—the party seeking the writ—has no adequate means of obtaining relief without facing uncorrectable prejudice.

## B. The Right to Mandamus is Clear and Indisputable

The United States must prove that its right to mandamus is clear and indisputable. This is satisfied where the district court commits a "clear abuse of discretion or judicial usurpation of power." *In re Univ. of Mich.*, 936 F.3d at 466. In seeking mandamus, the United States alleges two errors by the district court: (1) the court participated in plea negotiations by expressing its disapproval of appeal waivers during a pretrial hearing; and (2) the court improperly rejected the resulting plea agreement based on the court's policy of refusing to accept those same terms.

### 1. Judicial Participation

Rule 11 of the Federal Rules of Criminal Procedure prohibits a district court from participating in plea negotiations. The Rule provides: "An attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement. The court must not participate in these discussions." Fed. R. Crim. P. 11(c)(1).[1] We have "stringently" interpreted and enforced that prohibition. *United States v. Fleming*, 239 F.3d 761, 765 (6th Cir. 2001); *United States v. Skidmore*, 998 F.2d 372, 375 (6th Cir. 1993). Classic examples of prohibited judicial participation are when a district court attempts to "rewrite the plea agreement from the bench,"

---

[1]The Federal Rules of Criminal Procedure were revised in 2002. Prior to that revision, Rule 11(e)(1) contained the prohibition against judicial participation in plea negotiations. *United States v. Davila*, 569 U.S. 597, 605 n.3 (2013).

*Fleming*, 239 F.3d at 765, or endeavors to "facilitate a plea," *United States v. Barrett*, 982 F.2d 193, 196 (6th Cir. 1992), *abrogated on other grounds by United States v. Davila*, 569 U.S. 597 (2013). Rule 11 does, however, allow the district court to be involved in the acceptance or rejection of certain plea agreements. *See* Fed. R. Crim. P. 11(c)(2), (c)(3)(A). But in those circumstances, the court's role is limited to evaluating the plea agreement once it has been finalized by the parties and disclosed to the court. Fed. R. Crim. P. 11(c)(1)–(5); *United States v. Harris*, 635 F.2d 526, 528 (6th Cir. 1980); *see also United States v. Markin*, 263 F.3d 491, 496–98 (6th Cir. 2001) (comparing cases in which judicial involvement occurred after the completion of the plea agreement with those in which the involvement occurred during plea negotiations— noting that the latter "clearly would have violated [Rule 11]"). Accordingly, when a district court expresses its preference for or against certain plea-bargaining terms in an unfinalized or hypothetical plea agreement, the court impermissibly participates in plea negotiations in violation of Rule 11.

The district court here did just that. Rather than wait to consider a finalized plea agreement, the court initiated substantive plea-related discussions. More specifically, during a pretrial hearing, the court expressed to the parties its preference—calling it a "practice"—that plea agreements not include sentencing-appeal and collateral-review waivers. The court then warned the parties to "keep [the court's position] in mind as [they] engage[d] in . . . discussions." The court implicitly affirmed its position in a subsequent email when it informed the parties that the plea agreement would be rejected as written. At best, this conduct strongly suggested that the parties should not include those terms in their plea agreement. At worst, it conditioned the court's approval of a future plea agreement on the absence of those terms. Either way, this left the parties with the legally insupportable impression that no defendant could waive his or her appellate rights in a plea agreement before that judge. *See United States v. Milliron*, 984 F.3d 1188, 1192 (6th Cir. 2021) (recognizing that a defendant may waive his right to appeal by means of a plea agreement); *United States v. Ashe*, 47 F.3d 770, 775–76 (6th Cir. 1995) ("Any right, even a constitutional right, may be surrendered in a plea agreement if that waiver was made knowingly and voluntarily.").

That the court made those comments while plea negotiations were ongoing is crucial. That is precisely the type of judicial participation most clearly prohibited by Rule 11. *See* Fed. R. Crim. P. 11(c)(1). And for good reason. Judicial participation of any kind is "inherently coercive," *United States v. Ushery*, 785 F.3d 210, 219 (6th Cir. 2015) (quotation omitted), and it is particularly so when the district court cautions the parties to "keep [its position] in mind" while they negotiate. *See Harris*, 635 F.2d at 529 ("If the court puts its imprimatur on a plea offer, the defendant might be coerced into taking it . . . ."). Judicial participation also undermines fairness and judicial neutrality. *Barrett*, 982 F.2d at 195–96. Here, the district court does not meaningfully defend its actions in its appellate brief. But its written opinion rejecting the plea agreement cites *United States v. Rankin*, 94 F.3d 645 (6th Cir. 1996) (per curiam), for the proposition that no judicial participation occurs where the court does not comment on the defendant's "case, any aspect of sentencing, or [the defendant's] possible guilt or innocence." We are unpersuaded. There is no indication that our decision in *Rankin* was meant to provide an exhaustive list of possible Rule 11 violations.

We considered a similar claim of judicial participation in *Ushery*, 785 F.3d at 219–21. In that case, the district court allowed the parties to negotiate a plea agreement in its presence, and after the court "commented on a proposed plea that [the defendant] had not yet agreed to, . . . the specific items that the court raised became the focal points . . . of the continued negotiation." *Id.* at 220. We observed that the district court "may" have violated Rule 11(c)(1) but refrained from deciding the issue because the defendant's "substantial rights" were not affected. *Id.* at 218, 220–21. We now make it clear that Rule 11 absolutely prohibits judicial involvement of any form in plea negotiations, an interpretation that is widely held among circuit courts. *Barrett*, 982 F.2d at 195; *see, e.g.*, *United States v. Baker*, 489 F.3d 366, 373 (D.C. Cir. 2007); *United States v. Cano-Varela*, 497 F.3d 1122, 1132 (10th Cir. 2007); *United States v. Bradley*, 455 F.3d 453, 460 (4th Cir. 2006); *United States v. Miles*, 10 F.3d 1135, 1139 (5th Cir. 1993). In this context that means that while plea negotiations are ongoing a district court is prohibited from commenting on a hypothetical plea agreement that it would or would not accept. Other circuit courts, again, agree. *In re Benvin*, 791 F.3d at 1103 (granting mandamus and finding that "the court's suggestion that the parties add a particular term to the plea agreement constitutes impermissible involvement"); *United States v. Harrell*, 751 F.3d 1235, 1239 (11th Cir. 2014)

(finding a Rule 11 violation because a court's pre-plea agreement suggestions are improper "indications of what the judge will accept" (quotations omitted)); *United States v. Pena*, 720 F.3d 561, 570–73 (5th Cir. 2013) (finding that a court's comments on a hypothetical plea agreement violated Rule 11). Because Rule 11 "means what it says," *Barrett*, 982 F.2d at 195, once a district court has gone beyond its role in accepting or rejecting a finalized plea agreement, Rule 11 has been violated.

While the district court's conduct may have been motivated in good faith by its concern for defendants, there is "no good motives exception" to Rule 11. *Ushery*, 785 F.3d at 220 (quoting *Harrell*, 751 F.3d at 1240). Therefore, the district court's involvement violated Rule 11's prohibition on judicial participation.

## 2. Improper Rejection of the Plea Agreement

The United States argues that the district court abused its discretion by rejecting the parties' plea agreement. Because we find that the district court did not base its decision on the circumstances of the case, we agree.

District courts have discretion to accept or reject plea agreements that are governed by Rule 11(c)(1)(A), such as the one at issue in this case. *United States v. Doggart*, 947 F.3d 879, 882 (6th Cir. 2020) ("[A] district court is under no obligation to accept a Rule 11(c)(1)(A) plea deal even if the defendant and the government both agree to it."); Fed. R. Crim. P. 11(c)(3)(A) ("[T]he court may accept the [Rule 11(c)(1)(A)] agreement, reject it, or defer a decision until the court has reviewed the presentence report."). But a court's discretion is not unfettered. *Cota-Luna*, 891 F.3d at 647; *see United States v. Sabit*, 797 F. App'x 218, 221 (6th Cir. 2019).

First, the court's discretion is constrained by separation of powers concerns when it considers Rule 11(c)(1)(A) agreements, otherwise known as "charge bargains." A charge bargain is a type of plea agreement that contemplates the government's dismissal of charges, or its assurance to not bring additional charges, in exchange for a defendant's guilty plea to another, typically lesser, charge. Fed. R. Crim. P. 11(c)(1)(A); *see Doggart*, 947 F.3d at 882–83. Unlike sentencing decisions, charging decisions traditionally fall within the power of the Executive branch—in this case, the prosecutors. *United States v. Miller*, 722 F.2d 562, 564–65 (9th Cir.

1983).  A court considering a charge bargain must, therefore, exercise its discretion with due regard to prosecutorial prerogatives.  *Id.*; *United States v. Vanderwerff*, 788 F.3d 1266, 1277 (10th Cir. 2015); *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 745 (D.C. Cir. 2016).

Second, if the court decides to reject a plea agreement, it must explain why.  *United States v. Moore*, 916 F.2d 1131, 1136 (6th Cir. 1990).  And the explanation must be a "sound" one.  *Cota-Luna*, 891 F.3d at 647 (requiring district courts to exercise "sound judicial discretion" and "articulate a sound reason" before rejecting a plea agreement (quotations omitted)).  What is considered "sound" will often depend on the case at hand.  But generally, a district court may not act arbitrarily, *Moore*, 916 F.2d at 1135, invidiously, *United States v. Walker*, 922 F.3d 239, 249 (4th Cir.), *vacated on other grounds*, 140 S. Ct. 474 (2019), or pursuant to a categorical policy, *Cota-Luna*, 891 F.3d at 651 (Kethledge, J., concurring); *Miller*, 722 F.2d at 565.  Applying these principles, we have held that a district court may reject a plea agreement when, for example, the agreement does not adequately reflect the seriousness of the offense, *see Doggart*, 947 F.3d at 882, unduly cabins the judge's sentencing discretion, *see Sabit*, 797 F. App'x at 221, or is "contrary to the sound administration of justice," *see Moore*, 916 F.2d at 1136 (quoting *United States v. Severino*, 800 F.2d 42, 46 (2d Cir. 1986)).

Finally, the district court must give every case independent consideration and base its decision on the specific plea agreement before it.  *Miller*, 722 F.2d at 566; *Walker*, 922 F.3d at 249–50.  The court cannot reject a plea agreement based on abstract or extraneous policy considerations unrelated to the particular case, because a court which does that abdicates its duty to exercise any discretion at all.  *Walker*, 922 F.3d at 249 ("[F]ailure to consider the specific agreement would constitute an abdication—and hence an abuse—of discretion."); *Miller*, 722 F.2d at 565 ("[T]he existence of discretion requires its exercise."); *Moore*, 916 F.2d at 1136 ("The authority to exercise judicial discretion implies the responsibility to consider all relevant factors and rationally construct a decision.").

In this case, we cannot ascertain any case-specific reason why the district court rejected the plea agreement.  The district court's opinion states none, and on appeal, neither the *amici* nor the district court point to one.  For these reasons, the district court failed to articulate a "sound reason," and we conclude that it abused its discretion.

The district court's primary concern was that the plea agreement was "contrary to the public interest" because it contained appeal waivers that were "overly broad" and the United States "failed to identify any discernable substantial criminal justice interest" that justified including these waivers.  To the court's credit, it carefully and thoroughly laid out its qualms about appeal waivers, specifically, and plea bargaining, generally.  The court explained its belief that appeal waivers "embargo" trial court mistakes, "insulate" the government's conduct "from judicial oversight," effectively "coerce" guilty pleas with offers "too good to refuse," and "inhibit[] the development of the Sentencing Guidelines."  But, to reiterate, a district court's policy concerns in the abstract are not case-specific exercises of its discretion.

We see no individualized assessment here.  For example, the district court repeatedly expressed concern that the appeal waivers were "broad."  While that is a legitimate consideration, the court never articulated what would support that finding *in this case*.  The court merely offered generalized reasons that boil down to policy disagreements with appeal waivers in general.  And those reasons make little sense here where the appeal waivers are not absolute.  The waivers still allowed Townsend to appeal any sentence over the government's recommendation, seek relief under the First Step Act, and file ineffective-assistance and prosecutorial-misconduct claims.  It is an abuse of discretion for a court reject a plea agreement based on a finding that is clearly not in accord with the facts of the case.  *Cota-Luna*, 891 F.3d at 648 (finding an abuse of discretion where the district court rejected a plea agreement based on its mistaken belief that the agreed-upon sentence was too lenient); *see also United States v. Mandoka*, 869 F.3d 448, 452–53 (6th Cir. 2017).

The district court also criticized the government's legitimate interest in finality, again citing only global reasons.  In doing so, it made no effort to explain why, in this case, added finality would cause a miscarriage of justice.  *See United States v. Mathews*, 534 F. App'x 418, 424–25 (6th Cir. 2013) (suggesting that an otherwise valid appeal waiver would be unenforceable if it results in a "miscarriage of justice").  What is particularly troubling is that the court's reasoning would seemingly prohibit every plea agreement containing appeal waivers, regardless of the defendant's case, the agreement's charging or sentencing terms, or the parties' reasons for negotiating those waivers.  We cannot credit the district court's argument that it

engaged in an individualized assessment simply because it inserted the phrase "the circumstances of this case" at various points in its opinion. Without more explanation from the court, such language is mere surplusage.

The district court also seemed to question whether the waivers were "fully knowing," because Townsend could not knowingly waive his right to "seek[] relief based on rights that have not yet been recognized by the law." As the United States correctly points out, though, a defendant can validly waive his rights in a plea agreement even if he does not anticipate future factual or legal developments in his favor. *United States v. Bradley*, 400 F.3d 459, 463–64 (6th Cir. 2005) ("A valid plea agreement, after all, requires knowledge of existing rights, not clairvoyance."); *Brady v. United States*, 397 U.S. 742, 756–57 (1970). Even though the district court's reasoning in this regard was mistaken, we find that it was not a principal basis for the court's rejection. We do emphasize, however, that a district court's "misunderstanding of law does not count as a sound reason for rejecting a guilty plea and thus amounts to an abuse of discretion." *Doggart*, 906 F.3d at 509.

The district court was certainly under no obligation to accept the plea agreement, but categorical rejections are improper. They may leave criminal defendants such as Townsend worse off. For example, Townsend's plea agreement sought to reduce his mandatory minimum by half, which also would have provided the district court with more discretion at sentencing than if Townsend were convicted at trial. Hence, under the agreement, the court could have sentenced Townsend anywhere between 10 years and life, instead of 20 years to life.

The United States argues that the district court cannot consider at all whether charge bargains contain appeal waivers. It provides two reasons, neither of which has merit. First, the United States implies that, because appeal waivers are an "enforceable . . . part of the plea-bargaining process," their presence in a plea agreement cannot form the basis for a district court's rejection. That is simply not true. That appeal waivers are enforceable does not mean that district courts lack the discretion to scrutinize them when deciding whether to accept a plea agreement. In the same way, it also does not mean that district courts necessarily abuse their discretion when they reject what they reasonably perceive as an overly broad appeal waiver. *See United States v. Melancon*, 972 F.2d 566, 568 (5th Cir. 1992).

Second, the United States argues that the district court's authority to accept or reject a charge bargain is limited to two considerations: first, whether the remaining charges adequately reflect a defendant's criminal conduct, and second, whether they unduly restrict the court's sentencing discretion. In the United States's view, the structure of Rule 11 indicates that the district court's decision must always relate to its sentencing power in some way. While it is true that the Judiciary wields significant power over criminal sentencing and has no authority over the Executive branch's charging decisions, those separation of powers concerns are best addressed on a case-by-case basis, not with a bright-line rule. So long as the district court's assessment is soundly based on the circumstances of the case and does not frustrate prosecutorial independence, we generally do not otherwise limit what the district court may consider. *See United States v. Skidmore*, 998 F.2d 372, 376 (6th Cir. 1993) (analyzing a charge bargain and noting that "Rule 11 does not limit the reasons for which the district court may reject a proposed plea agreement"); *United States v. Yates*, 698 F.2d 828, 829–30 (6th Cir. 1983) (per curiam) ("Acceptance or rejection of a plea agreement is the prerogative . . . of the district court."). Therefore, a court may consider the propriety of every term in a proposed plea agreement—including terms such as sentencing-appeal and collateral-review waivers.

In support of its argument, the United States cites *United States v. Vanderwerff*, 788 F.3d 1266 (10th Cir. 2015). In *Vanderwerff*, the Tenth Circuit held that the district court abused its discretion in rejecting a plea agreement because the agreement included appeal waivers. *Id.* at 1271. That case, however, is distinguishable and provides little guidance. The district court's rejection in *Vanderwerff* was predicated on legally irrelevant sentencing factors and a "grievous[] misread[ing]" of two Supreme Court cases. *Id.* at 1272–76. We have no similar "error[s] of law" here. *See id.* at 1272–73. Moreover, although the district court here surely criticizes plea bargaining, it does not mistakenly suggest that plea bargaining is "of dubious legality" as the court did in *Vanderwerff*. *Id.* at 1276.

To summarize, a district court does not possess unrestrained discretion to reject a plea agreement. It must, among other things, make an individualized assessment of the agreement and predicate its decision on the specific facts and circumstances presented. Because the district court here failed to do that, this is the narrow circumstance in which the district court abused its

discretion.  Accordingly, the United States has a clear and indisputable right to mandamus on this ground.

## C.  Mandamus is Appropriate.

Mandamus relief, though extraordinary, is appropriate under the circumstances.  Such relief is reserved "for 'questions of unusual importance necessary to the economical and efficient administration of justice' or 'important issues of first impression.'"  *John B. v. Goetz*, 531 F.3d 448, 457 (6th Cir. 2008) (quoting *In re Perrigo Co.*, 128 F.3d 430, 435 (6th Cir. 1997)). A district court's "oft-repeated error" or "persistent disregard of the federal rules" also weighs in favor of mandamus.  *Id.*  This case presents these circumstances.  First, whether a judge may comment on hypothetical plea agreements that it would or would not accept under Rule 11 is an issue of first impression in this circuit.  It is also the first time that we have found it to be an abuse of discretion for a district court to reject a plea agreement without citing case-specific reasons.  Second, this case involves important questions regarding plea agreement procedure and judicial involvement in pleas, both of which bear on the "efficient administration of justice."  *See id.* (quotation omitted).  And as stated earlier, those questions might evade review if not considered at this time.  Finally, there is evidence that this district court has had a long-standing and frequent practice of rejecting plea agreements containing appeal waivers, and of stating that practice to parties.  Given that the United States apparently has its own blanket policy—of including these waivers in every plea agreement—this issue will almost certainly appear again. Considering the novel, important, and likely reoccurring questions presented in this petition, mandamus relief is appropriate.

There is one final aspect of this case worth mentioning: the specific writ requested would remedy only one of the two underlying injuries.  It is a well-settled principle that any relief sought from a court must, at a minimum, redress a party's alleged harm.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  A writ directing the district court judge to reconsider the plea bargain would of course redress the injury caused by the judge's prior abuse of discretion, but it would not redress any injury caused by the judge's Rule 11 violation.  Instead of asking for a judicial reassignment so that the parties may freely engage in plea discussions, or for an order preemptively stopping improper judicial participation, the United States chose to request only

that the same plea agreement be reconsidered by the same district court that rejected it the first time. *C.f. Barrett*, 982 F.2d at 196 (assigning the case to a new judge on remand "[t]o cure th[e] improper judicial participation in the plea bargaining process"); *United States v. Werker*, 535 F.2d 198, 205 (2d Cir. 1976) (issuing a writ of mandamus ordering the district court to refrain from participating in plea discussions before such participation occurred). A court's reconsideration would not grant the United States any relief from the court's pretrial comments.

Nevertheless, because the writ properly remedies the district court's improper rejection of the plea agreement, issuance of the writ is warranted on that basis.

**III.**

For the foregoing reasons, we GRANT the United States's petition for a writ of mandamus. We REMAND this case to the district court for further proceedings consistent with this opinion.