NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0178n.06

No. 24-6072

**UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| REGINALD DEWAYNE BROWN, | ) | |
| Defendant-Appellant. | ) ) | OPINION |
| | ) | |

Before: SILER, MOORE, and BLOOMEKATZ, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Reginald Brown was convicted by a jury of conspiracy to possess with intent to distribute cocaine and possession with intent to distribute cocaine. The district court sentenced Brown to 198 months' imprisonment followed by a six-year term of supervised release. On appeal, Brown argues that the district court erred in rejecting two Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreements, denying Brown a *Franks* hearing, and admitting into evidence a receipt from AutoZone. Because none of his arguments has merit, we **AFFIRM** the judgment of the district court.

**I. FACTUAL BACKGROUND**

On September 21, 2022, Detective Cody Pfeiffer with the Louisville Metro Police Department (LMPD) obtained a search warrant to ping Reginald Brown's cell phone. R. 109-1 (Cell Phone Warrant at 1–3) (Page ID #493–95). According to the affidavit accompanying the warrant application, in July 2022 LMPD detectives were conducting surveillance at a local convenience store when they observed a known convicted felon standing by the door of a car "with

a handgun with an extended magazine in his front waistband." *Id.* at 7 (Page ID #499). He was with another individual later identified as Brown. *Id*. at 7–9 (Page ID #499–501). Brown then drove away in that car. *Id.* at 7–8 (Page ID #499–500). Detectives followed the vehicle and initiated a traffic stop "with lights and sirens for excessive window tinting," but the "vehicle failed to yield and accelerated at a high rate of speed in a residential neighborhood fleeing detectives." *Id.* at 8 (Page ID #500). Detective Pfeiffer thereafter determined that Brown was currently on probation. *Id.* at 9 (Page ID #501). He filed a criminal complaint warrant for Brown with charges for fleeing, wanton endangerment, excessive window tinting, and disregarding a stop sign. *Id.* at 7 (Page ID #499). The cell-phone search-warrant affidavit "certif[ied] that the Louisville Metro Police Department is conducting a criminal investigation as well as a fugitive investigation of a violent felony offender in connection with possible violations of weapon possession." *Id.* at 11 (Page ID #503).

Two days later, Detective Pfeiffer used the information obtained through the search warrant to follow Brown. R. 217 (Trial Tr. Vol. 4 at 87–89) (Page ID #2352–54). Detective Pfeiffer observed Brown conducting a "heat check," driving in a loop to determine whether he was being followed. *Id.* at 94–95 (Page ID #2359–60). Detective Pfeiffer also realized that Brown was being followed by another vehicle, the driver of which Detective Pfeiffer later determined was Axel Diaz-Hernandez. *Id.* at 92, 95 (Page ID #2357, 2360). Other officers tracked Brown and Diaz-Hernandez to a house in Louisville. R. 215 (Trial Tr. Vol. 2 at 24) (Page ID #2090). A woman arrived and handed Brown a white shopping bag. *Id.* at 29 (Page ID #2095). Brown and another individual, Clarence Stott, then sat in the front of the vehicle Brown had been driving "for an extended amount of time before exiting . . . with the white shopping bag." *Id.* The woman returned and handed Stott a vacuum-sealer box and vacuum bags. *Id.* at 30 (Page ID #2096). Brown, Stott,

and Diaz-Hernandez then entered the house. *Id.* Some time later, Brown left in Stott's car, drove to an AutoZone, then returned to the house. *Id.* at 31 (Page ID #2097); R. 216 (Trial Tr. Vol. 3 at 27–29) (Page ID #2230–2232). He handed Diaz-Hernandez a small box, which Diaz-Hernandez took to the "driver rear side" of the car he had been driving. R. 215 (Trial Tr. Vol. 2 at 31) (Page ID #2097).

During surveillance, officers observed the three men "in and out of the rear hatch" of the car Diaz-Hernandez had been driving, as well as around the driver's side wheel well. *Id.* at 29 (Page ID #2095). Officers also observed, at some point during surveillance, that the driver's side rear wheel had been removed and was resting on the ground. R. 217 (Trial Tr. Vol. 4 at 65–66) (Page ID #2330–31). Diaz-Hernandez later left in that vehicle. R. 215 (Trial Tr. Vol. 2 at 32) (Page ID #2098). Detective Pfeiffer and others followed Diaz-Hernandez to the parking lot of a local hotel. R. 217 (Trial Tr. Vol. 4 at 99–100) (Page ID #2364–65). Officers observed Diaz-Hernandez taking items from the car he was driving and placing them in a pickup truck. *Id.* at 104 (Page ID #2369). He then sat in the truck. *Id.* at 100 (Page ID #2365). Officers spoke with Diaz-Hernandez and located a kilogram of cocaine in a Starbucks bag underneath the driver's seat of the truck. *Id.* at 103–04 (Page ID #2368–69); R. 215 (Trial Tr. Vol. 2 at 52–53) (Page ID #2118–19).

After towing the vehicle that Diaz-Hernandez had driven from the house to the hotel, officers conducted a search and located a hidden compartment in the driver's side rear wheel well that contained $59,110 in cash in vacuum-sealed bags. R. 215 (Trial Tr. Vol. 2 at 84–86) (Page ID #2150–52); R. 217 (Trial Tr. Vol. 4 at 41–42) (Page ID #2306–07). The compartment had been sealed and disguised with a glue called J-B Weld. R. 172 (Diaz-Hernandez Test. at 24–25) (Page ID #1391–92). Officers also obtained a search warrant for the house. R. 215 (Trial Tr. Vol. 2 at

34) (Page ID #2100). During the search, officers located money counters, "a large amount of narcotics, a large amount of money, vacuum seals," bags, cell phones, and digital scales. *Id.* at 57 (Page ID #2123). The narcotics recovered from the house were later determined to be cocaine with a net weight of 6.9 kilograms.[1] *Id.* at 108 (Page ID #2174). Brown was arrested with $5,877 on his person. R. 217 (Trial Tr. Vol 4 at 40, 133) (Page ID #2305, 2398).

Several days after the house search, officers obtained receipts from AutoZone from the time period Brown had been observed there. R. 217 (Trial Tr. Vol. 4 at 141) (Page ID #2406). One receipt from that time showed a cash purchase of J-B Weld along with another glue that Diaz-Hernandez admitted having. *Id.* at 143–44 (Page ID #2408–09); R. 172 (Diaz-Hernandez Test. at 24–25) (Page ID #1391–92).

## II. PROCEDURAL BACKGROUND

On October 4, 2022, Brown was indicted on one count of conspiracy to possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(ii)(II), and one count of possession with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(b)(1)(A)(ii)(II). R. 18 (Indictment at 1–2) (Page ID #29–30). Brown was arraigned and pleaded not guilty. R. 28 (Arraignment Order at 1) (Page ID #71).

The following July, Brown moved for a change of plea hearing and advised the court that the parties had reached a plea agreement. R. 55 (Mot. to Schedule Change of Plea Hr'g at 1) (Page ID #127). The Government then filed a superseding information charging Brown with the same

---

[1]Both the Plea Agreement PSR and the factual statement in Brown's proffered plea agreement state that eight kilograms were found in the house. R. 72 (Plea Agreement PSR at 5) (Page ID #242); R. 60 (Plea Agreement at 2) (Page ID #140).

two offenses, but for the amount of "500 grams or more" under 21 U.S.C. § 841(b)(1)(B)(ii)(II). R. 57 (Superseding Information at 1–2) (Page ID #129–30). Brown and the Government presented a plea agreement under Rule 11(c)(1)(C), pursuant to which Brown agreed to plead guilty to the charges in the superseding information in exchange for a stipulated sentence of 60 months' imprisonment. R. 60 (Plea Agreement at 1–5) (Page ID #139–43). The district court accepted Brown's guilty plea but deferred deciding whether to accept the plea agreement until after the presentence investigation report (PSR) was prepared. R. 59 (Order at 2) (Page ID #135). Using the 2021 Sentencing Guidelines Manual, the Plea Agreement PSR calculated Brown's total offense level as 27, criminal history category as VI, and corresponding Guidelines range as 130 to 162 months' imprisonment. R. 72 (Plea Agreement PSR at 6, 20, 25) (Page ID #243, 257, 262).[2] Neither party objected to the Plea Agreement PSR. R. 72-1 (Plea Agreement PSR Addendum at 1) (Page ID #267).

At sentencing, the district court rejected the plea agreement. R. 203 (Sent'g Hr'g Tr. at 11) (Page ID #1741); R. 83 (Mem. of Hr'g & Order at 1) (Page ID #299). The court explained that the parties had not provided adequate justification for such a large downward variance from the low end of the Guidelines range, 130 months, to the agreed-to 60 months. R. 203 (Sent'g Hr'g Tr. at 10–12) (Page ID #1740–42). The court set a status conference for several months later to allow Brown to consider how he would like to proceed. *Id.* at 12–14 (Page ID #1742–44). The parties then presented the court with another Rule 11(c)(1)(C) plea agreement that contained the same terms, but with a recommended sentence of 72 months' imprisonment. R. 205 (Status Hr'g Tr. at

---

[2]For clarity, we refer to the PSR prepared for the district court's consideration of the plea agreement, R. 72, as the "Plea Agreement PSR." Of course, after the district court rejected the plea agreement and Brown withdrew his guilty plea and went to trial, the Plea Agreement PSR was no longer relevant. A new PSR was prepared after Brown's jury conviction—that post-trial PSR is not implicated in this appeal.

7) (Page ID #1756). The district court again rejected the plea agreement for the same reasons as it had rejected the first. *Id.*

Brown withdrew his guilty plea and proceeded to a jury trial on the original indictment. R. 115 (Mem. of Hr'g & Order at 1) (Page ID #536) (noting Brown's guilty-plea withdrawal and setting the case for trial); R. 120 (Order at 1–2) (Page ID #550–51) (dismissing the superseding information). The jury returned a guilty verdict on both counts of the indictment, R. 167 (Verdict at 1–2) (Page ID #1361–62), and the district court sentenced Brown to 198 months' imprisonment to be followed by a six-year term of supervised release, R. 185 (J. at 1–2) (Page ID #1624–25).

### III. PLEA AGREEMENT[3]

The parties disagree as to whether the district court's rejection of the plea agreement should be reviewed for abuse of discretion or for plain error. We need not decide because we conclude that the district court did not err under either standard of review. Federal Rule of Criminal Procedure 11(c)(1)(C) states that a defendant and the government may enter into a plea agreement that recommends a specific sentence or sentencing range. If the court accepts the plea agreement, it is bound by the recommendation. FED. R. CRIM. P. 11(c)(1)(C). When presented with such a plea agreement, a district "court may accept [it], reject it, or defer a decision until the court has reviewed the presentence report." FED. R. CRIM. P. 11(c)(3). In general, "[a]cceptance or rejection of a plea agreement is the prerogative . . . of the district court." *United States v. Yates*, 698 F.2d 828, 829 (6th Cir. 1983) (per curiam). A district court must, however, give a sound explanation for rejecting a plea agreement. *In re United States*, 32 F.4th 584, 594 (6th Cir. 2022).

---

[3]Although Brown briefly references the second, 72-month plea agreement, D. 29 (Appellant Br. at 17), he focuses primarily on the first, 60-month agreement, *id.* at 17–27. He makes no particular argument as to the 72-month plea agreement. *Id.* We therefore follow his lead and address the 60-month plea agreement.

The district court provided a sufficient explanation in this case. As is the "preferred practice," *United States v. Cota-Luna*, 891 F.3d 639, 647 (6th Cir. 2018), the district court deferred its decision on the plea agreement until after the Plea Agreement PSR was prepared. R. 201 (Change of Plea Hr'g Tr. at 25, 27, 30) (Page ID #1714, 1716, 1719). The Plea Agreement PSR calculated Brown's Guidelines range as 130 to 162 months. R. 72 (Plea Agreement PSR at 25) (Page ID #262). Neither Brown nor the Government filed any objections to the Plea Agreement PSR, R. 72-1 (Plea Agreement PSR Addendum at 1) (Page ID #267), or raised any objections at the initial sentencing hearing, R. 203 (Sent'g Hr'g Tr. at 3–4) (Page ID #1733–34). At that sentencing hearing, the district court indicated that it did not feel it "ha[d] the information [it thought] necessary to justify" the 60-month sentence provided for in the plea agreement, given the low-end of the Guidelines range at 130 months. *Id.* at 4 (Page ID #1734).[4] After hearing argument from the parties, and having reviewed the sentencing memoranda, the district court concluded that a 60-month sentence was "insufficient" and "would not provide just punishment given the nature and circumstances of the offenses of conviction and given the history and characteristics of Mr. Brown." *Id.* at 10 (Page ID #1740). The district court highlighted Brown's criminal history, recounting past convictions. *Id.* at 10–11 (Page ID #1740–41).

The district court's reliance on the wide disparity between the agreed-to 60-month sentence and the Guidelines range, as well as the failure of the 60-month sentence to reflect the seriousness of Brown's offenses and criminal history constituted a sound explanation for the court's rejection of the plea agreement. It is inarguable that there is quite a bit of daylight between 60 months and 130 months, and it was within the district court's discretion to conclude that, in these

---

[4]Ahead of the hearing, the district court had given notice on the docket that "it may reject the parties' Rule 11(c)(1)(C) plea agreement." R. 73 (Notice) (Page ID #268).

circumstances, a 60-month sentence would not adequately capture the seriousness of Brown's offense. *See In re United States*, 32 F.4th at 594 (noting that we have previously held that a district court may reject a plea agreement when "the agreement does not adequately reflect the seriousness of the offense" (citing *United States v. Doggart*, 947 F.3d 879, 882 (6th Cir. 2020))); *United States v. Lanier*, No. 25-3059, 2025 WL 3244491, at *3 (6th Cir. Nov. 20, 2025). In reaching that conclusion, the district court fulfilled its "independent obligation to ensure that" the plea agreement "stipulate[s] to an appropriate sentence within the applicable Guideline range, or else justify any departure from the Guidelines." *United States v. George*, 804 F. App'x 358, 362 (6th Cir. 2020) (quoting *United States v. Sabit*, 797 F. App'x 218, 221–22 (6th Cir. 2019)); *see also* U.S.S.G. § 6B1.2(c) (U.S. SENT'G COMM'N 2021). We therefore discern no error in the district court's rejection of the plea agreement.

Brown's argument that the district court improperly relied on a Guidelines range calculated using the wrong drug amount is unavailing. Brown complains that the Plea Agreement PSR's Guidelines calculation "was based on a quantity of five kilograms or more of cocaine, which in turn was based on the original indictment—even though that indictment had been replaced with a superseding information charging Brown with possession of 500 grams or more rather than five kilograms or more." D. 29 (Appellant Br. at 24). Brown is mistaken in several respects. First, the Plea Agreement PSR was not "based on" the original indictment (which charged violations of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(**A**)), but rather accurately reported the relevant offenses as conspiracy to distribute and possession with intent to distribute in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(**B**), as charged in the superseding information. *Compare* R. 72 (Plea Agreement PSR at 1) (Page ID #238), *with* R. 57 (Superseding Information at 1–2) (Page ID #129–30).

Second, and more to the point, the Plea Agreement PSR correctly determined drug quantity based on Brown's "relevant conduct," pursuant to the Guidelines. "In order to determine the base offense level for sentencing purposes, the district court must determine the quantity of drugs for which a defendant is responsible." *United States v. Sengmany*, 590 F. App'x 494, 497 (6th Cir. 2014); *see* U.S.S.G. § 2D1.1(a)(5) (stating that the base offense level is that specified in the Drug Quantity Table). As with all crimes, the offense level is determined by Brown's "relevant conduct." *See United States v. Knipp*, 138 F.4th 429, 437 (6th Cir. 2025). The drug quantity attributed to a defendant must be supported by a preponderance of the evidence. *See United States v. Gardner*, 32 F.4th 504, 524 (6th Cir. 2022). Here, the PSR attributed to Brown a quantity of 11.58 kilograms of cocaine, comprised of one kilogram located in the truck, eight kilograms located in the house, and 2.58 kilograms converted from seized cash. R. 72 (Plea Agreement PSR at 5) (Page ID #242); *see United States v. Russell*, 595 F.3d 633, 646 (6th Cir. 2010) ("Seized funds can be converted into an equivalent amount of drugs."). Thus, a preponderance of the evidence supported the PSR's drug-quantity calculation, which was appropriately used to determine Brown's offense level.

In sum, contrary to Brown's argument, the district court did not rely on an improperly calculated Guidelines range when rejecting the plea agreement. The district court did not err in rejecting the plea agreement.

We observe that this result is in some ways harsh. With Brown citing his mitigating characteristics, including childhood abuse and extreme childhood disadvantage, R. 203 (Sent'g Hr'g Tr. at 9–10) (Page ID #1739–40), the parties initially took the position that the 18 U.S.C. § 3553(a) factors supported a 60-month sentence. Then, with full information about Brown's criminal history, the parties agreed that a 72-month sentence was appropriate. Yet the district court

rejected the parties' positions both times, and after all was said and done, the district court sentenced Brown to 198 months: over ten years above the Government's initial recommendations. Nevertheless, on this record, we cannot say that the district court abused its discretion.

## IV. *FRANKS* HEARING

Brown argues that the district court erred by refusing to hold a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), on Brown's motion to suppress related to the phone-tracking warrant. With respect to the denial of a *Franks* hearing, we review the district court's findings of fact for clear error and questions of law de novo. *United States v. Poulson*, 655 F.3d 492, 503 (6th Cir. 2011). To be entitled to a *Franks* hearing a defendant must "make[] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155–56. The burden a defendant faces is "high." *United States v. Reed*, 163 F.4th 338, 355 (6th Cir. 2025). The defendant "should specify the portions of the warrant he claims are false, state the reasons for that claim, and either provide reliable witness statements or explain their absence." *Id.*

Brown failed to make the requisite showing, and the district court did not err in declining to hold a *Franks* hearing. Brown takes issue with the statement in the affidavit that "the Louisville Metro Police Department is conducting a criminal investigation as well as a *fugitive* investigation of a violent felony offender in connection with possible violations of weapon possession." R. 109-1 (Warrant Affidavit at 11) (Page ID #503) (emphasis added). Brown claims that he was not a "fugitive" "[u]nder any prevailing definition." D. 29 (Appellant Br. at 31). His argument falls flat. Even assuming *arguendo* that the affidavit's statement regarding a "fugitive investigation" was false, Brown offered no evidence either before the trial court or here that the affiant included

10

the false statement "knowingly and intentionally, or with reckless disregard for the truth." *Franks*, 438 U.S. at 155; *see, e.g.*, *United States v. Bateman*, 945 F.3d 997, 1010 (6th Cir. 2019); *Reed*, 163 F.4th at 355; *see also* R. 112 (Order Denying Mot. to Suppress at 8) (Page ID #531) ("Brown has not provided evidence to support his conclusory allegations that [the affiant]'s statements were false."). The district court, therefore, did not err in declining to hold a *Franks* hearing.

## V. AUTOZONE RECEIPT

Finally, Brown argues that the district court erroneously admitted without proper authentication the AutoZone receipt. Specifically, Brown argues that (1) the Government failed to provide the notice required by Rule 902(11), and (2) because the receipt was not self-authenticating, the Government needed to authenticate it through a live witness, which it failed to do because Detective Pfeiffer was not qualified under Rule 803(6)(D). We "review[] evidentiary rulings for abuse of discretion." *United States v. Ramer*, 883 F.3d 659, 669 (6th Cir. 2018). Federal Rule of Evidence 902 provides that certain categories of "evidence are self-authenticating" and "require no extrinsic evidence of authenticity in order to be admitted." Self-authenticating evidence includes domestic records that are "certifi[ed]" as meeting the requirements of Rule 803(6)(A)–(C) by "the custodian or another qualified person." FED. R. EVID. 902(11). In order to come within this subsection, "[b]efore the trial or hearing, the proponent must give an adverse party reasonable written notice of the intent to offer the record—and must make the record and certification available for inspection—so that the party has a fair opportunity to challenge them." *Id.*

At trial, Brown objected that the AutoZone receipt was not "self-authenticating under Rule 902." R. 217 (Trial Tr. Vol. 4 at 120) (Page ID #2385). The Government responded that it had "receive[d] a certification from AutoZone that [the receipts] are a business record" and had

11

"provided" the certification "to defense counsel." *Id.* at 121 (Page ID #2386). The district court asked the Government whether it "gave the defense notice of your intent to admit this record under Rule 902(11) pretrial," to which the Government replied that it had "tendered it in discovery" and listed it in its exhibit list, but it "didn't provide any additional notice." *Id.* at 122 (Page ID #2387). Brown's counsel "acknowledge[d] that they sent all that to [him]." *Id.*[5] Brown's counsel explained that he "assumed one of [the Government's] witnesses would be somebody from AutoZone." *Id.* at 126 (Page ID #2391). After some back and forth, the district court overruled the objection and admitted the receipt and certification. *Id.* at 140–41 (Page ID #2405–06) (district court stating that the exhibit "qualifies" and "[t]he certificate of business record is sufficient").

On appeal, Brown does *not* argue that the certification substantively failed to comply with Rule 803(6). Rather, he takes issue only with the alleged lack of notice as required under Rule 902(11). Caselaw addressing Rule 902(11) in this circuit is extremely sparse, but we have not previously taken an overly restrictive approach to compliance with the rule's notice requirement. In *United States v. Jordan*, the defendant (representing himself *pro se*) objected at trial that he had received notice from the government under Rule 902(11) for records corresponding to one phone number, but had received no records for that number and instead received records for a different phone number. 544 F.3d 656, 669 (6th Cir. 2008). The district court attributed the mistake to a

---

[5]Context makes clear that defense counsel was referring to both the receipt itself and the certification:

> [DEFENSE COUNSEL]: Judge, I would acknowledge that they sent all that to me.
> THE COURT: I didn't hear that.
> [DEFENSE COUNSEL]: That I would acknowledge they sent those forms to me.
> THE COURT: You got this?
> [DEFENSE COUNSEL]: I did.
> THE COURT: I have 27A and 27B.
> [DEFENSE COUNSEL]: Yes, sir.

R. 217 (Trial Tr. Vol. 4 at 122) (Page ID #2387). Exhibit 27A is the certification and exhibit 27B is the receipt.

typographical error and ordered the government to file a corrected notice, which it did, and served such notice on the defendant the following day. *Id.* We concluded that the district court did not abuse its discretion "in dealing with th[at] matter." *Id.* at 669–70.

Despite that the provided notice was certainly less than ideal in this case, we conclude that the district court did not abuse its discretion by admitting the AutoZone receipt. The day before trial, the Government filed an amended exhibit list that listed number 27A, "Certification for Auto Zone Receipt," and number 27B, "Certified Auto Zone Receipt." R. 144 (Am. Ex. List at 2–3) (Page ID #1103–04). At trial, defense counsel acknowledged having received both exhibits 27A and 27B. R. 217 (Trial Tr. Vol. 4 at 122) (Page ID #2387). Thus, although the Government did not provide a separate "notice" document, the tendering of the certification itself, which referenced Rule 902(11) in its title, *see* D. 30 (Appellee Br. at 23), provided adequate *actual* notice. *See United States v. Komasa*, 767 F.3d 151, 155–56 (2d Cir. 2014) (concluding that actual notice sufficed). In the circumstances of this case, such notice was sufficient to comply with Rule 902(11). Again, Brown does not argue that the certification failed to meet the strictures of Rule 902(11) in any respect other than notice. We conclude, therefore, that the district court did not abuse its discretion in admitting the receipt as self-authenticating under Rule 902(11).

Because the receipt was self-authenticating under Rule 902(11), it did not need to be authenticated by a live witness under Rule 803(6)(D). Whether or not Detective Pfeiffer could be considered a proper "custodian or []other qualified witness" to authenticate the receipt under that rule is therefore irrelevant.

## VI.  CONCLUSION

The district court did not err in rejecting the plea agreement, refusing to hold a *Franks* hearing, or admitting the AutoZone receipt as self-authenticating evidence.  Accordingly, we **AFFIRM** the judgment of the district court.