# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 8, 2023

Lyle W. Cayce
Clerk

———————

No. 22-40332

———————

United States of America,

*Plaintiff—Appellee*,

*versus*

Ehab Sadeek,

*Defendant—Appellant*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:20-CR-853-1

———————————————————————

Before Clement, Elrod, and Willett, *Circuit Judges*.

Per Curiam:

Ehab Sadeek was convicted of enticement of a minor, travel with intent to engage in illicit sexual conduct, and transfer of obscene material to a minor. A total offense level of 41 and a criminal history category of I yielded a guideline imprisonment range of 324 to 405 months. The district court adopted the Pre-Sentence Report and sentenced him to 405 months in prison, a life term of supervised release, a $300 special assessment ($100 for each count), and a $15,000 Justice for Victims of Trafficking Act special assessment ($5,000 for each count). Sadeek timely appealed. On appeal, he raises multiple challenges to his sentence. Because the district court erred in

imposing the Justice for Victims of Trafficking Act special assessment for count three of Sadeek's conviction, we VACATE the district court's judgment as to that special assessment. Because the district court correctly interpreted and applied the Sentencing Guidelines, we otherwise AFFIRM the district court's judgment as to Sadeek's conviction and sentence.

## I.

Sadeek met K.B. online and began chatting through a messaging platform. K.B. advised Sadeek from the outset that she was 13 years old. Initially the messages were polite, but eventually Sadeek's messages became sexual in nature. He sent K.B. images of his penis and videos of him masturbating, professed his love for K.B., and told her that he was going to take her to Massachusetts where he lived and that he would visit her in Texas. K.B. gave him her address. Sadeek flew to Texas, rented a car, and went to her home.

When Sadeek arrived, K.B. led him to the backyard, near an old barn, and Sadeek began kissing and groping her as they were talking. K.B. kept trying to stop Sadeek, but he ultimately "bear hugged" her and forced her to perform oral sex, holding the back of her head with his hand so that she could not stop. Sadeek left in search of food, and when he came back the two ate behind the barn. He then again started kissing K.B., and despite her protests, he "pushed her against a wall" and began assaulting her. He left that night and slept at a hotel.

The next day Sadeek returned, and this time came into K.B.'s home. He brought food and clothes, including lingerie. After some pleading, he convinced K.B. to wear a dress he brought, then "threw K.B. on her bed so hard that it hurt her." He proceeded to rape K.B. multiple times. When she tried to pull away, he "grabbed her legs and pulled her towards him." K.B.

No. 22-40332

suffered physical injures, which were confirmed during a hospital examination.

On appeal, Sadeek raises three challenges to his sentence. Two of his challenges relate to the calculation of his base offense level. In calculating the base offense level for count one, enticement of a minor, the Pre-Sentence Report applied the cross-reference to the offense level in U.S.S.G. § 2A3.1, the Guideline for criminal sexual abuse. Sadeek argues that the district court clearly erred by applying the cross-reference to § 2A3.1 based on a finding that he engaged in sexual acts by using force or placing the victim in fear. The Pre-Sentence Report also included an enhancement for engaging in a pattern of prohibited sexual conduct, which Sadeek objected to in the district court and challenges on appeal. Also, Sadeek challenges the imposition of a $5,000 Justice for Victims of Trafficking Act special assessment for his conviction for the transfer of obscene materials to a minor.[1]

## II.

This court conducts a bifurcated review of a district court's sentencing determination. *United States v. Robinson*, 741 F.3d 588, 598 (5th Cir. 2014). We must first determine whether the district court committed a "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory,

---

[1] The government agrees that the district court erred by imposing this special assessment, as this assessment does not apply to Sadeek's conviction under count three for transfer of obscene material to a minor in violation of § 1470, which falls under Chapter 71 (relating to obscenity). 18 U.S.C. § 3014(a) (obscenity offenses in Chapter 71 are not subjected to the Justice for Victims of Trafficking Act special assessment). Therefore, we vacate the district court's judgment as to its imposition of this $5,000 special assessment under the Justice for Victims of Trafficking Act. *See United States v. Senke*, 986 F.3d 300, 320 (3d Cir. 2021) (vacating a plainly erroneous Justice for Victims of Trafficking special assessment, but otherwise affirming the conviction and sentence).

failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Gall v. United States*, 552 U.S. 38, 51 (2007). Second, if there is no procedural error or if the procedural error is harmless, this court reviews the substantive reasonableness of the sentence for abuse of discretion. *Robinson*, 741 F.3d at 598.

We review the district court's application and interpretation of the Guidelines *de novo*. *Id.* The district court's factual findings "are entitled to considerable deference and will be reversed only if they are clearly erroneous." *United States v. Mata*, 624 F.3d 170, 173 (5th Cir. 2010) (quoting *United States v. Betancourt*, 422 F.3d 240, 246 (5th Cir. 2005)). "A factual finding is clearly erroneous if, after reviewing the entire evidence, the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Id.* (quoting *United States v. Castillo*, 430 F.3d 230, 238 (5th Cir. 2005)).

### III. Application of the Cross-Reference to § 2A3.1

In his first challenge to the district court's sentence, Sadeek argues that the district court made an erroneous guideline calculation when it applied the cross-reference to § 2A3.1. Sadeek contends that the cross-reference was inappropriate because the record does not support a factual finding that he used force or threats.

The guideline provision for enticement of a minor in violation of § 2422(b) is generally § 2G1.3(a)(3) and establishes a base offense level of 28. *See* § 2G1.3(a)(3). But § 2G1.3(c) contains three cross-references that apply under circumstances meriting a more severe sentencing framework. *See* § 2G1.3(c)(1)-(3). The district court applied the third cross-reference, which states:

4

> If the offense involved conduct described in 18 U.S.C. § 2241 or § 2242, apply § 2A3.1 (Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse), if the resulting offense level is greater than that determined [under Section 2G1.3(a)].

U.S.S.G. § 2G1.3(c)(3).

Sadeek contends that the offense did not involve conduct described in § 2241 or § 2242. The application of this cross-reference to § 2A3.1 is appropriate if Sadeek's conduct is analogous to either a violation of § 2241 or § 2242. Here, we conclude that Sadeek both used force within the meaning of § 2241 and caused K.B. to engage in sexual acts by placing her in fear within the meaning of § 2242. Accordingly, the enhancement was not error.

## A. Use of Force as described by 18 U.S.C. § 2241

Conduct described by § 2241 includes "engaging in, or causing another person to engage in, a sexual act with another person . . . using force against the minor." § 2G1.3, cmt. n.5(B)(i). This court has addressed the differing levels of force required to violate § 2241. In *United States v. Lucas*, the court explained that "[a] defendant uses force within the meaning of § 2241 when he employs restraint sufficient to prevent the victim from escaping the sexual conduct." 157 F.3d 998, 1002 (5th Cir. 1998). "[F]orce can be implied from a disparity in size and coercive power between the defendant and his victim, as for example when the defendant is an adult male and the victim is a child." *Id.*

The Pre-Sentence Report establishes that Sadeek used force within the meaning of § 2241 by employing restraint sufficient to prevent K.B. from escaping the sexual conduct. According to the Pre-Sentence Report, after Sadeek arrived in the backyard he kissed and groped K.B., even though K.B. "kept trying to stop [him]." He then "bear hugged [her]," smashing her glasses against her face, and told her to perform oral sex. Though K.B. did

not want to, Sadeek held his hand on the back of her head and kept it there. Later that night he pushed K.B, so that her face was against a wall, and rubbed his penis against her, while she repeatedly asked him to stop. The next day, Sadeek "threw K.B. on her bed so hard that it hurt her," and began raping her. She pleaded with him to stop, and started feeling like she could not breathe because he was "crushing [her] with his weight." When she pulled away, he grabbed her legs and pulled her back towards him.

Sadeek raped K.B. multiple times while physically preventing her escape, physically restraining her, and crushing her to the point of her being unable to breathe. Therefore, there was certainly sufficient evidence that Sadeek's conduct fell within § 2241. *See United States v. Simmons*, 470 F.3d 1115, 1121 (5th Cir. 2006) (holding that the evidence was sufficient to support an aggravated sexual abuse conviction under § 2241 where the defendant forced the victim to perform oral sex by pulling her head and where she was unable to escape the rape because he pinned her between his body and his vehicle); *United States v. Carey*, 589 F.3d 187, 195 (5th Cir. 2009) (concluding that defendant's act of choking the victim, which prevented her from breathing, fell within § 2241); *Lucas*, 157 F.3d at 1002 n.9 (defendant's "pressing the victim against a table and thereby blocking her means of egress suffices to constitute force within the meaning of § 2241"); *United States v. Bowman*, 632 F.3d 906, 912 (5th Cir. 2011) ("By shoving the victim against the car door and forcing her to engage in sexual conduct, [defendant] clearly employed restraint sufficient to prevent the victim from escaping from the back seat."). Therefore, the cross-reference to § 2A1.3 was appropriate.

No. 22-40332

## B. Use of Threats as described by 18 U.S.C. § 2242

Though a finding that Sadeek's conduct also fell within § 2242 is not necessary, the evidence also demonstrates that Sadeek caused K.B. to engage in sexual acts by placing her in fear within the meaning of § 2242.

Conduct described by § 2242 includes "engaging in, or causing another person to engage in, a sexual act with another person by threatening or placing the minor in fear (other than by threatening or placing the minor in fear that any person will be subject to death, serious bodily injury, or kidnapping)." § 2G1.3, cmt. n.5(B)(iii).

In *Lucas*, the court explained that for purposes of § 2242, fear has a "very broad" definition and can be "inferred from the circumstances, particularly a disparity in power between defendant and victim." 157 F.3d at 1002; *see also id*. at 1002-03 (concluding that the disparity in power between a prison warden and the victim, who was an inmate, was sufficient to imply fear). "This element is satisfied when the defendant's actions implicitly place the victim in fear of some bodily harm." *Id*.

The evidence demonstrates that Sadeek caused K.B. to engage in sexual acts by placing her in fear of some bodily harm within the meaning of § 2242. After Sadeek's first day with K.B., where he held her head, forced her to perform oral sex, and pushed her against a wall while groping her, she was left shaking, scared, nauseous, and feeling like she was having a panic attack. K.B. said that, on the second day, after Sadeek refused to stop kissing and groping her, threw her on the bed, and refused to stop painful vaginal penetration, she was "too frightened of his physical strength to resist or try to escape from him."

The conclusion by the district court that there was sufficient force involved to apply the cross-reference is, at the very least, "plausible in light of the record as a whole." *See Mata*, 624 F.3d at 173.

No. 22-40332

## IV. Application of the § 4B1.5(b)(1) enhancement

Sadeek next contends that the district court clearly erred by applying the § 4B1.5(b)(1) enhancement after finding that Sadeek engaged in a pattern of prohibited sexual activity.

Under § 4B1.5(b)(1), the district court shall apply a five-level enhancement when the offense of conviction is a covered sex crime and the defendant has "engaged in a pattern of activity involving prohibited sexual conduct." Sadeek recognizes that his convictions under counts one and two—enticement of a minor in violation of § 2422(b) and travel with intent to engage in illicit sexual conduct in violation of § 2423(b)—are "covered sex crime[s]." § 4B1.5, cmt. n.2(A)(iii). Therefore, the only disputed issue is whether Sadeek's conduct, sexually assaulting the minor victim over the course of two days, constitutes a pattern of prohibited sexual conduct.

A pattern of prohibited sexual conduct is established "if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." § 4B1.5, cmt. n.4(B)(i). An occasion of prohibited sexual conduct can be considered "without regard to whether [it] occurred during the course of the instant offense." *Id.* cmt. n.4(B)(ii). However, the phrase "at least two separate occasions" is not defined by § 4B1.5 or its commentary.

Sadeek objected to the enhancement, arguing that this sexual assault occurred on two consecutive days for a single victim, rather than over a "substantial period of time." The phrase "substantial period of time" does not appear anywhere in this guideline enhancement. Rather, Sadeek wishes for the court to read this language into the guideline because this enhancement is located in the Career Offenders and Criminal Livelihood section of the Guidelines, and a different enhancement (§ 4B1.3 relating to criminal conduct engaged in as a livelihood) defines "pattern of criminal

conduct" as "criminal acts occurring over a substantial period of time." When interpreting § 4B1.5, this court will apply the text of § 4B1.5, not the language of the numerous other enhancements located elsewhere in Chapter 4.

This court has not addressed the meaning of "separate occasions" in the context of § 4B1.5(b)(1). Other circuits have applied the plain meaning of § 4B1.5 and concluded that the enhancement applies in cases where the prohibited activity occurred on consecutive days, so long as there were at least two separate instances of prohibited conduct. *United States v. Telles*, 18 F.4th 290, 303 (9th Cir. 2021) (concluding that the enhancement applied where the victim was sexually abused on two separate occasions—the first night of the defendant's trip and then again the second night of his trip); *see also United States v. Wandahsega*, 924 F.3d 868, 886-87 (6th Cir. 2019) (upholding a finding of a pattern of prohibited sexual conduct where the evidence established that the defendant had "touched [the victim's] genitals more than one time on different days"); *United States v. Fleetwood*, 457 F. App'x 591, 591-92 (8th Cir. 2012) (holding that sexual abuse occurring three times during a three-day trip and "at least two or three" times thereafter was "at least five separate occasions" for purposes of § 4B1.5(b)(1)).

No circuit has overturned the application of § 4B1.5(b)(1) because the "separate occasions" of prohibited conduct occurred too close together in time. Sadeek does not identify any case law establishing that his conduct on two different days should constitute a single occasion of abuse, or establishing that the prohibited sexual acts must continue for a certain period of time or occur on a certain number of occasions to constitute a pattern.

Therefore, we follow our sister courts by holding that the commission of distinct sexual assaults constitute "separate occasions," whether on the same or different days, for purposes of § 4B1.5(b)(1).

In this case, Sadeek first met K.B. in the backyard of her home where he kissed and groped her, and then forced her to perform oral sex. Later that evening, after leaving and returning with food, Sadeek pushed K.B. against a wall and forcibly rubbed his penis against her. The following day, after leaving to spend the night at a hotel, Sadeek came into K.B.'s home, threw her on the bed and raped her multiple times. At a minimum, the first encounter involving forced oral sex and third encounter the following day involving multiple instances of rape qualify as two "separate occasions" under § 4B1.5(b)(1), as the guideline requires.

\* \* \*

Accordingly, we AFFIRM the district court's judgment as to Sadeek's conviction and sentence, except as to the $5,000 special assessment under the Justice for Victims of Trafficking Act for count three of Sadeek's conviction, which we VACATE.