RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 26a0106p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

                                     *Plaintiff-Appellee*,

                                                     No. 25-5319

*v.*

DAVID LYNN VANNELLI,

                                     *Defendant-Appellant*.

───────────────

Appeal from the United States District Court for the Middle District of Tennessee at Cookeville.
No. 2:22-cr-00018-1—William Lynn Campbell, Jr., District Judge.

Argued: March 19, 2026

Decided and Filed: April 3, 2026

Before: MOORE, THAPAR, and MATHIS, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Molly Rose Green, R. David Baker, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellant. Nicholas J. Goldin, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee. **ON BRIEF:** Molly Rose Green, R. David Baker, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Nashville, Tennessee, for Appellant. Nicholas J. Goldin, UNITED STATES ATTORNEY'S OFFICE, Nashville, Tennessee, for Appellee.

————————

**OPINION**

————————

THAPAR, Circuit Judge.  David Lynn Vannelli pled guilty to four charges related to the sexual abuse of a minor.  He entered a plea agreement that, if accepted, would require the district court to impose a sentence of 180 months' imprisonment.  But the district court found that sentence inadequate and rejected the plea agreement.  Rather than withdraw his plea, Vannelli proceeded to sentencing and received a sentence of 252 months in prison.  Vannelli now appeals the rejection of his plea agreement and his sentence.  We affirm both.

I.

In September 2022, federal law enforcement discovered an online post by a 13-year-old girl "offering her virginity."  R. 76, Pg. ID 324.  The post listed her age, email address, and phone number.  Law enforcement identified the girl and visited her home.  They soon discovered that David Lynn Vannelli had responded to her post and started exchanging explicit texts with the girl.  Vannelli told the victim he was 20 years old and wanted to meet up near her house in Tennessee.  In reality, he was 39 years old (and lived in South Carolina).

By the time the FBI intervened, Vannelli had engaged in graphic sexual conversations with the minor victim.  He repeatedly asked her to send nude photos of herself, and she complied.  Vannelli sent her nude images of himself in return.  He also had a video chat with the victim, during which he exposed himself to her and coached her to delete their text messages to avoid detection.  And he discussed meeting her in person at a park near the victim's home.

With her parents' consent, an FBI agent took over the victim's account and began talking to Vannelli while posing as the girl.  Vannelli continued expressing his intent to travel to Tennessee for sex with her.  And he repeatedly insisted that she come back to South Carolina to live with him permanently.  Vannelli wasn't concerned that she was only 13 years old—but he warned her to bring her laptop and phone so her mother wouldn't discover their conversations.

Ultimately, Vannelli chose a meeting spot near the victim's home. When he arrived, he found law enforcement waiting for him. He was arrested and charged with (1) sexual exploitation of a minor, (2) coercion and enticement of a minor to engage in unlawful sexual activity, (3) interstate travel with intent to engage in illicit sexual conduct, and (4) transferring obscene material to an individual under the age of 16. *See* 18 U.S.C. §§ 2251(a), (e); 2422(b); 2423(b); 1470.

Vannelli negotiated a plea agreement with the government under Federal Rule of Criminal Procedure 11(c)(1)(C). That rule authorizes the government to enter plea agreements with a recommended sentence or sentencing range. Fed. R. Crim. P. 11(c)(1)(C). If a district court accepts a Rule 11(c)(1)(C) agreement, the sentencing "recommendation or request binds the court." *Id.* Vannelli agreed to plead guilty to all four counts of the indictment in exchange for a sentence of 180 months' imprisonment. When the parties submitted the proposed agreement to the district court, "the district court ha[d] three choices": accept the agreement, reject it, or reserve its decision until it reviewed Vannelli's presentence investigation report (PSR). *Hughes v. United States*, 584 U.S. 675, 682 (2018) (citing Fed. R. Crim. P. 11(c)(3)(A)). The district court reserved decision on the plea agreement until it received the PSR from the United States Probation Office.

Vannelli's PSR calculated a recommended sentence of 324 to 405 months' imprisonment under the United States Sentencing Guidelines. That range included a five-level enhancement for "engag[ing] in a 'pattern of activity' involving prohibited sexual conduct." R. 76, Pg. ID 329 (quoting U.S.S.G. § 4B1.5(b)). The enhancement applies to defendants who "engaged in prohibited sexual conduct with a minor" on two or more "separate occasions." U.S.S.G. § 4B1.5 cmt. n.4(B)(i). Vannelli objected to the enhancement, arguing that his "conduct occurred on the same occasion." R. 45, Pg. ID 105. For its part, the government argued that the enhancement was proper.

The district court then set a sentencing hearing and ordered the government to submit a supplemental memo explaining its justification for the proposed sentence in light of two similar cases before the district court. The government did so and asked the district court to accept the Rule 11(c)(1)(C) agreement.

After reviewing the parties' submissions, the district court rejected the plea agreement. It cited "the nature and circumstances of the offense, the seriousness of the offense, the need to protect the public, and the need to avoid unwarranted sentencing disparities." R. 59, Pg. ID 264. Vannelli moved for reconsideration and requested a hearing as required by Rule 11(c)(5).[1] During that hearing, the district court explained its rejection of Vannelli's plea in more detail.

At that point, Vannelli could have either withdrawn his plea or maintained it and proceeded to sentencing. He chose the latter. The district court then sentenced Vannelli to 252 months in prison followed by a lifetime of supervised release. Vannelli timely appealed.

## II.

Vannelli first argues that the district court failed to exercise sound judicial discretion in rejecting his plea agreement under Rule 11(c)(1)(C). We review a district court's decision to reject a plea agreement for abuse of discretion. *United States v. Doggart*, 947 F.3d 879, 882 (6th Cir. 2020). Under that "deferential" standard, we reverse only "when a defendant has firmly persuaded us that the district court erred." *United States v. Goodwin*, 87 F.4th 321, 327 (6th Cir. 2023) (quotation omitted). Because the district court here provided sound, case-specific reasons for rejecting the agreement, it didn't abuse its discretion.

In a Rule 11(c)(1)(C) case, a district court retains both the power and the duty to review the parties' agreed-upon sentence. Even when the government agrees to a sentence under Rule 11(c)(1)(C), the district court must exercise its "independent obligation" to review the sentence. *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion). After all, a defendant has "no absolute right to have a guilty plea accepted." *Santobello v. New York*, 404 U.S. 257, 262 (1971). Instead, a district court can reject a plea agreement so long as it exercises "sound judicial discretion" in doing so and adequately explains the rejection. *In re United States*, 32 F.4th 584, 594 (6th Cir. 2022) (quotation omitted). A district court fails to exercise sound discretion if it acts arbitrarily, pursuant to a categorical rule, or maliciously in rejecting the plea.

---

[1]Rule 11(c)(5) requires district courts to hold a hearing when rejecting a plea agreement made under Rule 11(c)(1)(C). Fed. R. Crim. P. 11(c)(5). The district court initially failed to do so. But that error is harmless. Because the district court held the required hearing upon Vannelli's request, the error didn't "affect [Vannelli's] substantial rights." Fed. R. Crim. P. 11(h).

*Id.* The district court here identified and explained plenty of sound and individualized reasons for rejecting Vannelli's Rule 11(c)(1)(C) agreement.

First, the district court emphasized Vannelli's knowledge of the victim's age. Vannelli responded to a solicitation that advertised sex with a 13-year-old. He then "coached her on how not to let her mother find out what had happened" and acknowledged that "her age was a problem." R. 77, Pg. ID 358. The district court concluded that such knowledge and intent made Vannelli's crime so egregious that the proposed 180-month sentence didn't adequately reflect the nature and circumstances of the offense or its seriousness. Those considerations are permissible in deciding whether to accept a plea agreement. *Doggart*, 947 F.3d at 882. By analyzing whether the sentence accounted for the specific facts of the case, the district court exercised sound judicial discretion.

The district court also emphasized the need to protect the public. Absent law enforcement's prompt and effective intervention, Vannelli "would have traveled four to five hours, raped a 13 year old, taken her back to South Carolina," and continued the abuse. R. 77, Pg. ID 358. The district court reasonably concluded that Vannelli posed a significant danger to other minors who might not be so lucky. That need to protect other children also justified a lengthier sentence.

Further, the district court concluded that the proposed sentence would contribute to nationwide sentencing disparities. It observed that offenders with the same criminal history and offense level as Vannelli received an average of 275 months in prison—over 50 percent more than Vannelli's proposed sentence. And the median sentence for similarly situated offenders was 240 months. The district court found that data "instructive" in deciding 180 months was insufficient. *Id.* at 359. Those disparities provided yet another sound and well-explained reason to reject the plea.

Vannelli responds with two arguments. First, he asserts that the district court erred by also considering intra-district sentencing disparities based on similar cases before it. On his view, that was impermissible because district courts may consider only *national* sentencing

disparities.  Second, he contends that the district court "failed to give the proper deference" to the government's "plea bargaining choices."  Appellant's Br. at 21.  He's wrong on both counts.

Section 3553(a) indeed directs district courts to consider nationwide sentencing disparities.  But even though local disparities aren't a mandatory sentencing factor, a district court may choose to consider them.  *United States v. Houston*, 529 F.3d 743, 752 (6th Cir. 2008).  Here, the district court found Vannelli's conduct "equally troublesome" as a similar case in which the defendant received 240 months' imprisonment.  R. 77, Pg. ID 359–60.  Noting similarities to other cases in the same district falls well within the district court's "sound discretion" to consider such disparities.  *United States v. Jenkins*, 821 F. App'x 504, 507 (6th Cir. 2020).  In any event, the district court appeared to place little weight on any local disparities, mentioning them only briefly at the plea-rejection hearing.  Instead, it primarily focused on the nature and circumstances of Vannelli's offense, the need to protect the public, and the national disparities that his 180-month sentence would create.

Vannelli's argument that the district court didn't properly defer to the government's plea-bargaining choices also fails.  A district court need not agree that a sentence is adequate just because the government negotiated it fairly.  Taken to its logical conclusion, Vannelli's argument would mean that district courts must *always* accept Rule 11(c)(1)(C) agreements if the government "properly weighed all of the relevant factors" and deemed the sentence "fair and appropriate."  Appellant's Br. at 23.  That directly conflicts with Rule 11's text.  *See* Fed. R. Crim. P. 11(c)(3)(A).

What's more, Vannelli overstates the respect owed to sentences in Rule 11(c)(1)(C) agreements.  A district court isn't a mere rubber stamp for the parties' agreed-upon sentence.  Instead, a district court has an "independent obligation" to exercise the sentencing power assigned to it by statute.  *Freeman*, 564 U.S. at 529.  So the district court didn't err by refusing to automatically accept the plea agreement, no matter how well negotiated it was.

At bottom, the district court explained its rejection of the Rule 11(c)(1)(C) agreement and gave "sound reason[s]" for doing so.  *In re United States*, 32 F.4th at 594 (quotation omitted).

And its reasons tracked the factors district courts must consider in deciding whether a sentence is sufficient. *See* 18 U.S.C. § 3553(a)(1)–(2), (6). So the district court didn't abuse its discretion.

## III.

Vannelli also argues his sentence is procedurally unreasonable because the district court miscalculated his Guidelines range by incorrectly applying an enhancement under § 4B1.5(b). We review procedural-reasonableness challenges for abuse of discretion. *United States v. Owens*, 161 F.4th 439, 441 (6th Cir. 2025). In doing so, we review a district court's interpretation of the Sentencing Guidelines de novo and its factual findings for clear error. *United States v. Knipp*, 138 F.4th 429, 436 (6th Cir. 2025).

Section 4B1.5(b) imposes a five-level enhancement on defendants who "engaged in a pattern of activity involving prohibited sexual conduct." U.S.S.G. § 4B1.5(b)(1). Vannelli admits that he engaged in "prohibited sexual conduct."[2] But he disputes that he did so on "at least two separate occasions." *Id.* § 4B1.5 cmt. n.4(B)(i). He argues that the district court erred by "failing to utilize the meaning of 'occasions' articulated in *Wooden v. United States*." Appellant's Br. at 25 (citing 595 U.S. 360 (2022)). We need not decide whether *Wooden* controls because even if it does, the district court correctly determined that Vannelli's conduct occurred on separate occasions.

## A.

Vannelli asks us to import *Wooden*'s definition of "occasions" into § 4B1.5(b)'s enhancement for repeat sex offenders. In *Wooden*, the Supreme Court analyzed the "occasions clause" of the Armed Career Criminal Act and observed that the "ordinary meaning" of "occasion" was "essentially an episode or event." 595 U.S. at 366. To identify separate occasions, the Court laid out a "multi-factored" inquiry, looking to factors including timing, proximity, and the "character and relationship of the offenses." *Id.* at 369.

---

[2]"[P]rohibited sexual conduct" in § 4B1.5 includes any offense listed in chapters 110 and 117 of Title 18 of the U.S. Code. *See* U.S.S.G. § 4B1.5 cmt. n.4(A); 18 U.S.C. § 2426(b)(1)(A). Vannelli agrees he committed three offenses under chapters 110 and 117: sexual exploitation of a minor, traveling in interstate commerce to engage in illicit sexual conduct, and coercion and enticement of a minor to engage in unlawful sexual activity. *See* 18 U.S.C. §§ 2251(a), (e); 2423(b); 2422(b). He only contests whether those offenses occurred on separate occasions.

Vannelli argues that § 4B1.5(b) triggers *Wooden*'s test for what constitutes an "occasion." That's because the application note to the enhancement defines a "pattern" as "at least two separate occasions." U.S.S.G. § 4B1.5 cmt. n.4(B)(i). As Vannelli points out, Congress directly enacted this application note—including the word "occasions"—in a 2003 statute. *See* Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today (PROTECT) Act of 2003, Pub. L. No. 108-21, § 401(i)(1)(A), 117 Stat. 650, 672 (2003). As a result, Vannelli argues that *Wooden*'s definition applies here because "[w]e can presume" that Congress intended "occasions" to mean the same thing in both statutes. Appellant's Br. at 27.

We need not answer this question of first impression in our circuit because Vannelli's challenge fails even under *Wooden*. We note only that no circuit has held that *Wooden* governs the definition of "occasions" in § 4B1.5(b).[3] Ultimately, even assuming *Wooden* applies, the district court properly applied the § 4B1.5(b) enhancement to Vannelli.

B.

The district court correctly determined that *Wooden* supports applying the § 4B1.5(b) enhancement to Vannelli. Recall the three primary factors from *Wooden*: timing, proximity, and the character and relationship of the offenses. 595 U.S. at 369. All three support applying the enhancement to Vannelli.

Start with timing. *Wooden* teaches that offenses "nearly always" occur on separate occasions when committed "a day or more apart." *Id.* at 370. As the district court noted, two days separated Vannelli's solicitation of nude photographs from his interstate travel to meet the victim. Vannelli completed one offense on September 25, 2022, when he solicited and received multiple nude photos from the minor victim. *See* 18 U.S.C. § 2251(a). He then committed

---

[3]While the Second Circuit found *Wooden* "instructive" and "relevant" to a different sentencing guideline, it also acknowledged that *Wooden* doesn't "directly control." *United States v. Bullock*, 152 F.4th 108, 116 (2d Cir. 2025). The Third Circuit has similarly noted *Wooden*'s "persuasive value" in applying § 4B1.5(b) without saying that it governs. *United States v. Rogers*, No. 24-1024, 2025 WL 2753673, at *2 n.11 (3d Cir. Sep. 29, 2025). And the Seventh Circuit expressly declined to decide the question on plain-error review, even if *Wooden*'s definition "may provide guidance" in the § 4B1.5(b) context. *United States v. Rice*, No. 22-1406, 2023 WL 2572215, at *2 (7th Cir. Mar. 20, 2023) (per curiam).

another offense on September 27, 2022, when he traveled from South Carolina to Tennessee to have sex with her. *See id.* § 2423(b). So *Wooden* supported the enhancement.[4] Likewise, the two offenses weren't "uninterrupted," which would indicate a single occasion under *Wooden*. 595 U.S. at 369. Instead, Vannelli consciously and intentionally prepared for his journey to abuse his victim in person, including by selling a generator to get gas money. Those intervening acts suggest different occasions of abuse.

The offenses also occurred in different locations, indicating separate occasions. Vannelli solicited images from the victim from his home in South Carolina. By definition, his travel to visit her in Tennessee occurred elsewhere—a five-hour journey northwest. As *Wooden* teaches, crimes "nearly always" occur on separate occasions when, as here, they're separated by "a significant distance." *Id.* at 370 (quotation omitted). So we agree with the district court that *Wooden*'s proximity factor also weighed in favor of separate occasions.

Finally, the offenses differed in kind. Vannelli argues that the child-pornography and interstate-travel offenses "were all inextricably linked" with the goal of him meeting and abusing the victim. Appellant's Br. at 31. And, of course, *Wooden* treats offenses with "a common scheme or purpose" as less likely to comprise separate occasions. 595 U.S. at 369. At a high level of generality, the offenses share similar traits. Both involve the sexual exploitation of a child: "a most serious crime and an act repugnant to the moral instincts of a decent people." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 244 (2002). But they served different goals. Vannelli's solicitation of child pornography created a "permanent record" of a child's victimization at the hands of an adult triple her age. *New York v. Ferber*, 458 U.S. 747, 759 (1982). And without law enforcement's intervention, the result of Vannelli's travel "would [have been] rape"—a different horrific offense. R. 78, Pg. ID 405. Likewise, soliciting images

---

[4]Our caselaw applying § 4B1.5(b) independent of *Wooden* points in the same direction. We've long held that abusing the same child "more than one time on different days" is sufficient to show multiple occasions and apply the pattern enhancement. *United States v. Wandahsega*, 924 F.3d 868, 886 (6th Cir. 2019); *see also United States v. Parkey*, 142 F.4th 866, 871–72 (6th Cir. 2025). Our sister circuits agree. *See, e.g.*, *Bullock*, 152 F.4th at 117–18 (finding separate occasions occurred on the same day because the defendant engaged in a non-criminal activity between the abuse); *United States v. Sadeek*, 77 F.4th 320, 326–27 (5th Cir. 2023) (per curiam) (finding separate occasions when the defendant abused the same victim on two consecutive days); *United States v. Telles*, 18 F.4th 290, 295, 303 (9th Cir. 2021) (finding separate occasions when the defendant abused the victim and then abused her again two nights later).

from the victim didn't further any kind of scheme or help him achieve the ultimate goal of abusing her in person.  Instead, Vannelli identified a victim, solicited images from her for his own lasting gratification, and then later attempted to abuse her in person.  The district court correctly concluded those offenses occurred on different occasions in part because they were "of a different nature and character" under *Wooden*.  R. 78, Pg. ID 392.  Plus, the offenses were committed in different ways—online and in person.  So the district court's finding of different occasions rightly reflected the offenses' distinct characteristics.

In sum, we don't need to decide whether *Wooden* governs because the district court correctly applied the § 4B1.5(b) enhancement to Vannelli even under *Wooden*'s definition of "occasions."

*            *            *

We affirm.